750 So.2d 1260 (1999)
Tommy GOREE a/k/a Tommy James Goree and Michael Porter a/k/a Michael Anthonio Porter, Appellants,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01644-COA.
Court of Appeals of Mississippi.
March 23, 1999.
*1261 Treasure R. Tyson, Martin M. Oden, Attorneys for Appellants.
Office of the Attorney General by Charles W. Maris, Jr., Attorney for Appellee.
BEFORE BRIDGES, C.J., COLEMAN, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Michael Porter and Tommy Goree were charged by the Grand Jury of Lauderdale County in a single indictment with the crime of armed robbery, with Goree being charged as a habitual offender pursuant to Miss.Code Ann. § 99-19-81 (Rev. *1262 1994). They were tried together in the Circuit Court of Lauderdale County, convicted and sentenced to a term of forty years each. Both Porter and Goree have appealed their conviction and sentence to this Court and have filed separate briefs.

FACTS
¶ 2. The following recitation of facts is based on the State's proof. On May 28, 1997, Porter entered Bolen's Curb Store where Sarah Knighton was employed as a cashier. Porter placed the gun on the counter, pointed it in Knighton's direction, and told her to hurry up. Knighton filled a bag with approximately $300$325. During this time, Goree was holding the door open from the inside. Also, inside the store was Steve Gordon. Gordon was in the back of the store restocking the cooler at the time of the robbery. He was not aware of the robbery until after it was over. After Knighton handed Porter the cash, Porter picked up the gun, and he and Goree fled. Knighton yelled that she had been robbed. Gordon came to the front and saw Porter and Goree as they ran. Later that night, Knighton went to the police station and identified Porter. She, however, was not able to identify Goree. About three weeks later, Knighton identified Goree when the detectives brought a second photo line-up to the store. Knighton and Gordon also identified Porter and Goree in court. Both Knighton and Gordon testified to seeing both men in the store on several occasions prior to the robbery. Gordon also testified that he became acquainted with Porter's name through Porter's frequent visits to the store.

DISCUSSION

I.
¶ 3. Porter raises separate issues on appeal. The following is stated verbatim from Porter's brief:
A. THE TRIAL COURT ERRED IN LIMITING THE DEFENDANT MICHAEL PORTER TO SIX PEREMPTORY CHALLENGES.
B. THE TRIAL COURT ERRED IN USING MORTALITY TABLES ALONE IN SENTENCING MICHAEL PORTER.
C. THE COURT ERRED IN SENTENCING MICHAEL PORTER AS A HABITUAL OFFENDER UNDER § 99-18-81,[SIC] MISS. CODE OF 1972.[1]

Did the trial court err in limiting Defendant Michael Porter to six peremptory challenges?
¶ 4. Porter did not preserve this issue for appeal; therefore, he is procedurally barred from asserting it here. In order to preserve an error for review, there must be a contemporaneous objection. Smith v. State, 530 So.2d 155, 161 (Miss.1988). It is counsel's responsibility to object specifically to preserve the issue for appeal. Nelson v. State, 687 So.2d 775 (Miss.App.1996). The trial court will not be held in error on a legal point that was not presented for the court's consideration. Chase v. State, 645 So.2d 829, 846 (Miss. 1994). Porter failed to make a contemporaneous objection to the division of peremptory challenges at the time the judge gave the instructions. In fact, both of the defense counsel agreed to allow Goree's defense counsel to announce the peremptory challenges. Neither counsel indicated a problem with the number of peremptory challenges allowed. The trial court did not err.
¶ 5. Even if we were to consider the claim on its merits, the claim would still fail. Porter contends that the language under Rule 10.01 of the Uniform Circuit and County Court Rules can be interpreted to give each multiple defendant in a capital case twelve peremptory challenges. Rule 10.01, however, is explicit. The rule states:
In all cases[,] defendants tried jointly shall be entitled to only the number of *1263 challenges to which one defendant would be otherwise entitled. URCCC 10.01
The above quoted rule has been the "law in this state for more than one hundred years." Blanks v. State, 451 So.2d 775, 777 (Miss.1984). Porter's interpretation is incorrect; therefore, the trial court did not err in limiting Porter to six peremptory challenges.

Did the trial court err in using mortality tables alone in sentencing Michael Porter?
¶ 6. As noted earlier, any error that was not preserved for review by contemporaneous objection is not reviewable by the appellate court. Smith v. State, 530 So.2d 155, 161 (Miss.1988). Porter did not object to the use of mortality tables in the sentencing phase, and he is thus barred from asserting this argument on appeal.
¶ 7. However, assuming arguendo that Porter had raised the objection, this claim still lacks merit. Porter contends that the trial court erred by not considering other factors to determine Porter's sentence. Absent a life sentence imposed by the jury, the trial judge will sentence the defendant to a definite term reasonably expected to be less than life. Stewart v. State, 372 So.2d 257, 258 (Miss. 1979); Henderson v. State, 402 So.2d 325 (Miss.1981). In Stewart, the court stated that the trial court could consider all relevant facts necessary to fix a sentence. Id. at 259. The trial court could consider age, life expectancy, and any other pertinent facts which would help in rendering a proper sentence. Id. at 259. The court in Henderson held that a trial court may take judicial notice of mortality tables. Henderson is similar to the case at bar. A twenty-two year old defendant was sentenced to forty-one years. The trial judge used an actuarial table issued by the United States Department of Commerce to determine the sentence. The court stated that mortality tables should only be used as a guide; however, the sentence imposed by the trial judge was upheld. Id. at 328. The court reasoned that the judge based his decision not only on the tables, but also on the absence in the record of any physical impairment or illness of the appellant. Id. at 329. The trial court in the case sub judice took judicial notice of a mortality table based on the United States 1990 Vital Statistics and determined that the life expectancy for Porter, then age 27, was 41.6 years. There was nothing in the record evidencing any physical impairment or illness. The trial court did not err in using such tables.
¶ 8. We now come to Porter's second assertion: that in cases involving indigent defendants, the State should bear the burden of providing all relevant health information. Porter, however, provides no authority to support this argument, and thus it cannot be considered by this court. Edlin v. State, 523 So.2d 42, 49 (Miss.1988); Estes v. State, 533 So.2d 437, 439 (Miss. 1988). Further, the trial court considered the pen pack, presentencing report, and all the other evidence present on the record to determine a reasonable sentence. Porter's argument is unpersuasive.

Did the court err in sentencing Michael Porter as a habitual offender under § 99-19-81, Miss.Code of 1972?
¶ 9. Porter asserts that the trial court erred in allowing an amendment to the indictment to reflect habitual offender status after his conviction. Porter's argument lacks merit. Porter interprets the record as indicating that the State made a motion to amend. Our review of the record does not reveal the existence of a motion to amend. Further, there is no indication in the record that the indictment was ever amended. While it is true the sentencing order mentions that Porter is a habitual offender, there is nothing in the order indicating that an amendment to the indictment had been allowed. We, therefore, decline to accept Porter's interpretation. Porter was not sentenced as a habitual offender. The State merely asked that the trial court, in considering Porter's sentence, take into account Porter's habitual offender status. The fact that Porter was sentenced to the same number of years as *1264 was Goree does not transform his sentence to habitual offender status. The provision for armed robbery under Miss.Code Ann. § 97-3-79 (Rev.1994) provides the following sentencing guideline:
In cases where the jury fails to fix the penalty at imprisonment in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years. (emphasis added).
¶ 10. In a case similar to the one at bar, the defendant, a nonhabitual offender, was sentenced to forty years imprisonment for armed robbery. Ware v. State, 410 So.2d 1330 (Miss.1982). The trial judge based the sentence on the defendant's actuarial life expectancy, which was 40.51 years. Id. at 1332. In upholding the sentence, the court stated that the evidence presented on the record justified "every possible year given." Id. The trial court did not err in sentencing Michael Porter.

II.
¶ 11. Goree raises a sole issue for review on appeal. The issue is recited verbatim from Goree's brief:
Whether or not the verdict of guilty was not supported by the overwhelming weight of the evidence and whether or not the trial court erred in denying defendant's Motion for Judgment Notwithstanding the verdict.
¶ 12. Even though Goree's statement of the issue is somewhat convoluted, the thrust of his argument is that the trial court erred in not granting his motion for new trial because the jury's verdict is against the overwhelming weight of the evidence. We will consider that issue.
¶ 13. In reviewing a motion for new trial, the appellate court must determine whether the trial court abused its discretion. Morgan v. State, 703 So.2d 832, 840 (Miss.1997); Esparaza v. State, 595 So.2d 418, 426 (Miss.1992). The trial judge should order a new trial only when he is convinced that the "verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Wetz v. State, 503 So.2d 803, 812 (Miss. 1987). In reviewing the claim, the appellate court must accept as true the evidence which supports the verdict. Johnson v. State, 642 So.2d 924, 928 (Miss.1994); Wetz, 503 So.2d at 812. Whenever there is conflicting evidence, the jury will assign weight and credibility to the evidence. Johnson, 642 So.2d at 928.
¶ 14. The facts are uncontested. Porter and Goree entered the store where Sara Knighton worked. Porter pulled a gun and robbed Knighton while Goree held the door open. Knighton identified Goree in a photo line-up and also identified him at trial. Steve Gordon, present in the store but unaware of the robbery, saw the men as they fled the scene. Gordon also identified Goree at trial. Both Knighton and Porter testified to seeing both men in the store on several occasions prior to the robbery.
¶ 15. With these facts in mind, we cannot say the trial court abused its discretion in denying the motion for new trial. Goree points to inconsistencies in Knighton's testimony to support his argument that the verdict was against the weight of the evidence. For instance, Goree contends that Knighton was inconsistent throughout her testimony in describing Goree. It was the jury's prerogative to determine the weight to be given Knighton's testimony. Apparently the jury considered Knighton's testimony credible. We, therefore, conclude that the trial court did not commit error in denying the motion for new trial.

CONCLUSION
¶ 16. We find that Porter's and Goree's claims lack merit. We, therefore, affirm the lower court's conviction and sentence of both Michael Porter and Tommy Goree.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF MICHAEL PORTER AND TOMMY GOREE *1265 OF ROBBERY BY USE OF A DEADLY WEAPON AND SENTENCE OF FORTY (40) YEARS EACH AS HABITUAL OFFENDERS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The correct title of the statute is § 99-19-81, Miss.Code of 1972 (Rev.1994).